355 S.E.2d 41

Robert B. PEERY

v.

Phyllis J. RUTLEDGE, Clerk, Circuit
Court of Kanawha County; Richard E.
Tyson, Chairman, Board of Review,
West Virginia Department of Employ-
ment Security; C.C. Elmore, Jr., Mem-
ber, Board of Review; J.K. Chase, Jr.,
Member, Board of Review; Adna Irl
Thomas, Commissioner, West Virginia
Department of Employment Security;
and United Auto Warehouse.

No. 17154.

Supreme Court of Appeals of
West Virginia.

March 12, 1987.

549

David B. McMahon, Legal Aid Soc. of Charleston, Charleston, for appellant.

Jack O. Friedman, Dept. of Employment Sec., Nitro, for appellees.

McHUGH, Justice:

Pursuant to *W.Va.Code*, 21A–7–27 [1970], this case is before this Court upon a writ of certiorari, to review a final order of

the Circuit Court of Kanawha County, West Virginia, affirming a final decision of the Board of Review of the West Virginia Department of Employment Security. The Board of Review and the Circuit Court determined that the petitioner, Robert B. Peery, was eligible to receive unemployment compensation benefits but was disqualified from receiving the same for the six-week period provided by *W.Va.Code,* 21A–6–3(2) [1984] for so-called "simple misconduct." [1] There is no dispute that the petitioner is eligible to receive unemployment compensation benefits. We reverse the Circuit Court's ruling on disqualification.[2]

## I

The petitioner was employed as a truck loader and emergency truck driver for United Auto Warehouse ("the employer") from January 18, 1984, to January 3, 1985. On January 2, 1985, the petitioner reported to work at his scheduled time, 2:00 p.m., and did a "bunch of lifting" in performing his duties as a truck loader over the next five hours.

At 7:00 p.m. that evening the employer's warehouse supervisor asked the petitioner to drive a truck that same night because the regular driver was ill. The record does not indicate the size or type of truck he was to drive. The petitioner was asked to drive the truck from Nitro, West Virginia, to Lewisburg, West Virginia, and back. He was authorized to rest three or four hours after arriving at Lewisburg and was to be back to work at Nitro around noon the next day (January 3, 1985). There is no evidence that the truck he was asked to drive had a sleeper cab or that provisions were made for a motel or other place to rest.

The petitioner told the supervisor that he was too tired to try to stay up all night to drive the truck after the work he had already done. He told the supervisor that he was exhausted and was not alert enough to drive the truck over the winding, mountainous route in question. He had become "violently ill" on a prior occasion at about 4:00 in the morning on the same route, and believed that driving the route this time would risk his life or the lives of others.

The employer discharged the petitioner the next day for refusing to drive in an emergency situation, which was one of his duties.

The petitioner subsequently filed a claim for unemployment compensation benefits. A deputy commissioner of the West Virginia Department of Employment Security decided that the petitioner was eligible for such benefits but was disqualified from receiving the same for the statutory period of six weeks because he had been discharged for so-called "simple misconduct." Upon appeal by the petitioner an administrative law judge conducted a *de novo* evidentiary hearing, made findings of fact and reached the same conclusions as the deputy. The petitioner again appealed, this time to the Board of Review of the West Virginia Department of Employment Security. After reviewing the record the Board of Review affirmed the findings of fact and conclusions of law of the administrative law judge.

Upon appeal by the petitioner the Circuit Court of Kanawha County affirmed the Board's decision. Quoting *Bailey v. Rutledge,* 174 W.Va. 476, 327 S.E.2d 456 (1985), the Circuit Court held: "Certainly[,] refusing a direct order to perform the job for which an employee is hired is misconduct[.]" 174 W.Va. at 478, 327 S.E.2d at 458.

## II

■ "Misconduct" disqualifying one from receiving unemployment compensation benefits requires

---

1. This case does not involve "gross misconduct," which is also a basis for disqualification set forth in *W.Va.Code,* 21A–6–3(2) [1984]. "Gross misconduct" is defined in that subdivision of the statute. "Misconduct" (simple misconduct) is not statutorily defined.

2. The West Virginia Unemployment Compensation Law provides a two-step process to determine entitlement to unemployment compensation benefits. When an individual is held to be eligible to receive such benefits, the next step is to consider possible disqualification from receiving such benefits. *Kisamore v. Rutledge,* 166 W.Va. 675, 680, 276 S.E.2d 821, 824 (1981).

conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of *standards o[f] behavior which the employer has the right to expect of his employee,* ... On the other hand, ... good faith errors in judgment ... are not to be deemed 'misconduct' within the meaning of the statute.

*Kirk v. Cole,* 169 W.Va. 520, 524, 288 S.E.2d 547, 549 (1982) (emphasis added). *Accord, Courtney v. Rutledge,* 177 W.Va. 232, 235, 351 S.E.2d 419, 422 (1986); *Federoff v. Rutledge,* 175 W.Va. 389, 392, 332 S.E.2d 855, 858 (1985); *Cooper v. Rutledge,* 169 W.Va. 288, 292–93, 286 S.E.2d 920, 922–23 (1982).

■ The term "misconduct" should be construed in a manner most favorable to not working a forfeiture. The penal character of the provision should be minimized by excluding cases not clearly intended to be within the exception denying unemployment compensation benefits. *Sewell v. Sharp,* 102 So.2d 259, 261–62 (La.Ct.App. 1958). This Court, has likewise concluded that "[d]isqualifying provisions [of the Unemployment Compensation Law] are to be narrowly construed. *Bennett v. Hix,* 139 W.Va. 75, [84,] 79 S.E.2d 114 [, 119] (1953)." *Gordon v. Rutledge,* 175 W.Va. 683, 685, 337 S.E.2d 920, 922–23 (1985). This principle is a corollary to the well settled principle that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syl. pt. 6, *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954). *Accord, Courtney v. Rutledge,* 177 W.Va. 232, 234, 351 S.E.2d 419, 421 (1986); *Brewster v. Rutledge,* 176 W.Va. 265, 266, 342 S.E.2d 232, 234 (1986); *Ash v. Rutledge,* 176 W.Va. 727, 729 n. 3, 348 S.E.2d 442, 444 n. 3 (1986); syl., *Gordon v. Rutledge,* 175 W.Va. 683, 337 S.E.2d 920 (1985).

■ A refusal to comply with a job assignment directive or a work rule may constitute "misconduct" for unemployment compensation purposes. Not every such refusal, however, constitutes such "misconduct." The former employer's job assignment directive or work rule must be reasonable under the particular circumstances, and the unemployment compensation claimant's reason for disregarding the job assignment directive or work rule must be examined to determine whether the claimant was justified, or at least exercised good faith, in not complying with the directive or rule. *See, e.g., Moore v. Unemployment Insurance Appeals Board,* 169 Cal.App.3d 235, 243, 215 Cal.Rptr. 316, 320–21 (1985), *review denied,* Sep. 11, 1985; *Hughes v. Commonwealth Unemployment Compensation Board of Review,* 40 Pa. Commw. 422, 423–26, 397 A.2d 494, 495–96 (1979). *See generally* annotation, *Employee's Insubordination as Barring Unemployment Compensation,* 26 A.L.R.3d 1333, § 7 ("Refusal to obey reasonable directive") (1969); 76 Am. Jur. 2d *Unemployment Compensation* §§ 52, 53, 55 (1975); 81 C.J.S. *Social Security and Public Welfare* §§ 222, 224 (1977).

■ A claimant for unemployment compensation benefits is not guilty of disqualifying "misconduct" when the claimant refuses to perform a job assignment because he or she reasonably and in good faith believes that performance of the job assignment would jeopardize the claimant's own health or safety or the health or safety of others. *See Amador v. Unemployment Insurance Appeals Board,* 35 Cal. 3d 671, 200 Cal.Rptr. 298, 677 P.2d 224 (1984); *Smallwood v. Florida Department of Commerce,* 350 So.2d 121 (Fla.Dist.Ct. App.1977) (refusal to drive a truck); *Webster v. Potlatch Forests, Inc.,* 68 Idaho 1, 187 P.2d 527 (1947); *Ferguson v. Department of Employment Services,* 311 Minn. 34, 247 N.W.2d 895 (1976); *McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533 (1978) (refusal to drive a truck); *Kuhn v. Department of Employment Security,* 134 Vt. 292, 357 A.2d 534 (1976). *Amador v. Unemployment Insurance Appeals Board,* 35 Cal. 3d 671, 200 Cal.Rptr. 298, 677 P.2d 224 (1984), *supra,* contains this perceptive remark:

It can no longer be maintained that a 'diligent' worker is one who blindly follows his or her employer's orders regard-

less of the potential consequences. The health [or safety] hazards of the modern work environment—to employees, consumers, and the population at large—are serious and widespread, and the record of employers in controlling those hazards does not inspire such confidence that a reasonable worker can be expected to trust invariably his or her employer's judgment.

35 Cal. 3d at 683, 200 Cal.Rptr. at 305, 677 P.2d at 231.[3]

■ In this context the unemployment compensation claimant must show that his or her fears that harm will result from performing the job assignment are not merely subjective but are objectively based upon his or her experience or the experience of other workers under similar circumstances. *See, e.g., Moore v. Unemployment Insurance Appeals Board,* 169 Cal.App.3d 235, 244, 215 Cal.Rptr. 316, 321 (1985), *review denied,* Sep. 11, 1985; *McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 623, 383 A.2d 533, 537 (1978). "[O]ne cannot [properly] determine whether an employee's action is misconduct within the humanitarian purpose of the unemployment compensation statutes without judging the reasonableness of his act from his standpoint in the light of the circumstances facing him and the knowledge possessed by him at the time." *City of Dallas v. Texas Employment Commission,* 626 S.W.2d 549, 551 (Tex.Ct.App.1981).[4]

■ If the former employer establishes that the unemployment compensation claimant has violated an ordinarily reasonable job assignment directive or work rule, the burden of going forward with the evidence shifts to the claimant to show that he or she was justified, or at least exercised good faith, in not complying with the directive or rule. *See Amador v. Unemployment Insurance Appeals Board,* 35 Cal. 3d 671, 681 n. 7, 200 Cal.Rptr. 298, 303 n. 7, 677 P.2d 224, 229 n. 7 (1984). If the claimant then introduces evidence of his or her reasonable fear of harm to the claimant's or others' health or safety, the former employer must rebut the reasonableness of the claimant's apprehension. These specific evidentiary rules are derived from the broader rule that the burden of persuasion is upon the former employer to demonstrate by the preponderance of the evidence that the claimant's conduct falls within a disqualifying provision of the unemployment compensation statute. *See Bennett v. Hix,* 139 W.Va. 75, 84–85, 79 S.E.2d 114, 119 (1953); *Industrial Laundry v. Review Board,* 147 Ind.App. 40, 44, 258 N.E.2d 160, 163 (1970); *Gatlin v. Brown,* 154 So.2d 224, 226 (La.Ct.App. 1963).[5]

The case of *Bailey v. Rutledge,* 174 W.Va. 476, 327 S.E.2d 456 (1985), relied upon by the Circuit Court herein, and the case of *In re Cantrell,* 44 N.C.App. 718, 263 S.E.2d 1 (1980), both involving a refusal to drive a truck, are inapposite here. In each of those cases the claimant refused the job assignment directive for personal reasons, not based upon a reasonable and good faith apprehension of harm to the health or safety of the claimant or others.

---

3. *Amador* also observes that "[a]n employee may violate an employer's reasonable rule 'as a good faith error in judgment rather than as misconduct.'" 35 Cal. 3d at 680, 200 Cal.Rptr. at 303, 677 P.2d at 229 (citation omitted).

4. We note that one of the factors which is to be considered in determining whether work offered to an unemployed individual is "suitable" is the degree of risk involved to the individual's health, safety or morals. *W.Va.Code,* 21A–6–5(1) [1963]. *Accord,* syl. pt. 2, *Hall v. Rutledge,* 174 W.Va. 816, 329 S.E.2d 890 (1985); syl. pt. 3, *Perfin v. Cole,* 174 W.Va. 417, 327 S.E.2d 396 (1985). If particular work would be unsuitable for health or safety reasons so as to justify an unemployed individual's refusal to accept such work, the same work is unsuitable for an employed individual so as to justify his or her refusal to perform such work without being guilty of "misconduct." Healthy and safe working conditions are as important, if not more so, to an employee as to a prospective employee.

5. There is an exception to the usual rule that the former employer bears the overall burden of proof with respect to showing the applicability of a disqualification provision of the unemployment compensation statute. Due to the particular wording of *W.Va.Code,* 21A–6–3(4) [1984], the burden of proof is upon each claimant employed at the time of the work stoppage to show that he or she was not participating, etc., in a labor dispute. Syl. pt. 1, *Copen v. Hix,* 130 W.Va. 343, 43 S.E.2d 382 (1947).

■ It is important to recognize that a claimant for unemployment compensation does not necessarily waive the right to raise the issue of his or her reasonable and good faith apprehension of harm to the health or safety of the claimant or others by accepting employment with the knowledge that the working conditions involve a health or safety risk. An excellent case in point is *Moore v. Unemployment Insurance Appeals Board*, 169 Cal.App.3d 235, 215 Cal.Rptr. 316 (1985), *review denied*, Sep. 11, 1985. There the claimants had been hired to work in a nuclear power plant. Upon being hired they signed a document stating that they understood there was a potential for work assignments in a radiation area of the plant. They were eventually assigned to work within the radiation area and were told that they would be discharged for refusing to work there. After very limited personal experience indicating problems with the radiation monitoring system and after hearing from coworkers and the news media about a recent radiation exposure "accident" at the plant for which fines had been imposed, the claimants refused to work in the radiation area. They were discharged. A state investigatory body subsequently found no unusual safety hazards at the plant.

Following their filing of claims for unemployment compensation, an administrative law judge ruled that the claimants had been discharged for misconduct and that they had waived any objection to work within the radiation area by expressly assuming the risk of exposure to radiation as a condition of employment.

In its opinion reversing the denial of benefits, the California intermediate appellate court disagreed with the argument that the benefits should be denied because radiation exposure was a known occupational hazard. The court held that this "waiver" or "assumption of the risk" concept was "insufficient to cast aside the underlying policy of the law guaranteeing employee self-determination in hazardous work environments." 169 Cal.App.3d at 245, 215 Cal.Rptr. at 322. "[K]nowledge

that one may be required to work in a radiation area simply does not constitute an acceptance to work in an unsafe and hazardous work environment [with an arguably unreliable radiation monitoring system] and to suffer any of the resulting consequences of radiation overexposure." *Id.*

■ In turning to the application of the legal principles to the facts of the case now before this Court, we conclude that the petitioner shouldered his burden of presenting evidence that his apprehension of harm to himself or others was reasonable by showing that on a prior occasion he had become "violently ill" while driving the same truck route under similar circumstances. This evidence, combined with the petitioner's testimony that he was exhausted after five hours of strenuous labor and would not be alert enough to drive the truck overnight over the winding, mountainous route, was sufficient to require the employer to present evidence rebutting the reasonableness of the petitioner's apprehensions about safety. Instead of presenting such evidence, however, the employer merely relied upon the argument that the petitioner was guilty of misconduct for unemployment compensation purposes solely because he refused to perform one of the duties, emergency truck driving, for which he was hired. The record does not establish, however, that the petitioner had agreed to drive a truck in an emergency regardless of whether he had rested adequately prior to the emergency trip. Even if he had so agreed, this "assumption of the risk" or "waiver of objection" would, for unemployment compensation purposes, be "insufficient to cast aside the underlying policy of the law guaranteeing employee self-determination in hazardous work environments." *Moore v. Unemployment Insurance Appeals Board*, 169 Cal.App.3d 235, 245, 215 Cal.Rptr. 316, 322 (1985), discussed *supra*.[6]

Moreover, the petitioner here refused to work about eighteen hours out of twenty-two hours (from 2:00 p.m. on one day until about noon of the next day, with three to four hours of rest during this time). A

---

**6.** The scope of judicial review in unemployment

compensation cases turns upon whether ques-

regulation promulgated by the United States Department of Transportation, 49 *C.F.R.* § 395.3(a) (1986), prohibits one from driving more than ten hours following eight consecutive hours off duty, or driving for any period after having been on duty fifteen hours following eight consecutive hours off duty. While this federal regulation is not, technically, applicable to the strictly intrastate transportation in this case, it does indicate the reasonableness of the petitioner's refusal to drive in this case.

We hold that the petitioner was not guilty of disqualifying "misconduct" in this case.[7]

For the reasons expressed in this opinion, the final order of the Circuit Court of Kanawha County with respect to disqualification is reversed, and this case is remanded to the Board of Review for it to enter an order in accordance herewith, as required by *W.Va.Code*, 21A–7–28 [1936].

Reversed and remanded with directions.

tions of fact or questions of law are involved: "Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong; however, the plainly wrong doctrine does not apply to conclusions of law by the Board of Review." Syl. pt. 1, *Kisamore v. Rutledge,* 166 W.Va. 675, 276 S.E.2d 821 (1981). *Accord,* syl., *Courtney v. Rutledge,* 177 W.Va. 232, 351 S.E.2d 419 (1986); *Brewster v. Rutledge,* 176 W.Va. 265, 267, 342 S.E.2d 232, 234 (1986); syl. pt. 2, *Ash v. Rutledge,* 176 W.Va. 727, 348 S.E.2d 442 (1986). In the present case there is no dispute as to the material facts. The question of law is whether the petitioner's refusal to perform the job assignment in question constituted disqualifying "misconduct" for unemployment compensation purposes. Accordingly, the plainly wrong doctrine does not apply here.

7. Another principle which supports our holding that the petitioner was not guilty of disqualifying "misconduct" is the general rule that a single instance of misconduct, even where proved, does not ordinarily disqualify a claimant for unemployment compensation. *Employment Security Board v. LeCates,* 218 Md. 202, 209, 145 A.2d 840, 844 (1958).