378 S.E.2d 667

**Althea HELM**

v.

**Cathy GATSON, Clerk; the Board of Review of the West Virginia Department of Employment Security, et al.; and Magnet Bank, FSB.**

**No. 18663.**

Supreme Court of Appeals of
West Virginia.

March 13, 1989.

---

Karen S. Hamrick, Charleston, for Magnet.

Jack O. Friedman, Charleston, for Emp. Sec.

Theodore Dues, Charleston, for Helm.

PER CURIAM:

This is an appeal by the employer, Magnet Bank, from a final order of the Circuit Court of Kanawha County reversing a decision of the Board of Review of the West Virginia Department of Employment Security (the Board). The Board had ruled that the employee (appellee) was indefinitely disqualified from receiving unemployment compensation benefits pursuant to W.Va. Code § 21A–6–3(2) because the employee had been discharged from her employment for gross misconduct.

The appellee, Althea Helm, was employed at Magnet Bank from July 1, 1983 until April 8, 1987, when she was discharged. The employee was initially hired as a bank teller; however, three months later she was promoted to the position of sales representative.

In November, 1986, Ms. Helm received a written notice from her supervisor that she had been disrespectful to customers and/or associates, that she had failed to follow company procedures, and that she had unauthorized absences. The notice warned her that she would be discharged if any of these problems recurred. In addition, she was suspended from work for three days.

In April, 1987, the appellee was discharged from her employment for cause—including rudeness to customers and failure to follow bank procedures relating to deposits. Subsequently, she filed for unemployment compensation benefits. The Deputy for the West Virginia Department of Employment Security found that although the employee was eligible for unemployment compensation benefits, she was disqualified from receiving them.[1]

---

1. "The West Virginia Unemployment Compensation Law provides a two-step process to determine entitlement to unemployment compensation benefits. When an individual is held eligi-

At a hearing before an administrative law judge (ALJ), Magnet Bank presented evidence that the appellant had accepted a $33,000 check for deposit without first obtaining supervisory approval, in direct contravention to the bank's written procedure.[2] As she had been previously warned, the employee was discharged for her recurring failure to follow bank procedure. In response, Ms. Helm testified that a customer had come into the bank and wanted to open an account with a $33,000 check. The appellee admitted that she accepted the check even though her supervisor was not available to give the required approval. When she was later available, the supervisor refused to approve the check because the check was improperly endorsed.[3]

After the hearing, the ALJ reversed the Deputy's initial determination. The ALJ ruled that the employee had not been discharged for misconduct, and was thus entitled to compensation benefits. The ALJ found that all the testimony and documentation submitted by the employer was hearsay and, therefore, inadmissible. Following an appeal by the employer, the Board set aside the decision of the ALJ and reinstated the decision of the deputy finding the employee eligible but disqualified from receiving compensation benefits indefinitely. Ultimately, the Circuit Court of Kanawha County reversed the Board's decision and ruled that the claimant was eligible and not disqualified from receiving benefits. From this adverse decision the employer appeals.

The Deputy and Board held that the appellee was indefinitely disqualified from receiving unemployment compensation benefits pursuant to W.Va.Code § 21A–6–3(2) (1984). This provision provides, in pertinent part:

If he were discharged from his most recent work for one of the following reasons, ... or any other gross misconduct; he shall be and remain disqualified for benefits until he has thereafter worked for at least thirty days in covered employment: *Provided, that for the purpose of this subdivision the words "any other gross misconduct" shall include, but not be limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from such act or acts.*

(Emphasis added.)

Therefore, "gross misconduct" includes instances of otherwise "simple" misconduct where the employee is clearly informed by a reasonable work rule that such acts would result in termination of employment. We have defined "misconduct" disqualifying one from receiving unemployment compensation benefits as:

... conduct evincing such willful and wanton disregard of an employer's interest as is found in deliberate violations or disregard of *standards of behavior which the employer has a right to expect of his employee,* ... On the other hand, ... *good faith errors in judgment* ... are not to be deemed "misconduct" within the meaning of the statute.

*Kirk v. Cole,* 169 W.Va. 520 at 524, 288 S.E.2d 547 at 549 (1982) (emphasis added) quoted in *Peery v. Rutledge,* 177 W.Va. 548, 355 S.E.2d 41 at 44. *Accord Courtney v. Rutledge,* 177 W.Va. 232, 351 S.E.2d 419 at 422 (1986); *Federoff v. Rutledge,* 175 W.Va. 389, 332 S.E.2d 855 at 858 (1985); *Cooper v. Rutledge,* 169 W.Va. 288, 292–93, 286 S.E.2d 920 at 922–23 (1982).

ble to receive such benefits, the next step is to consider possible disqualification from receiving these benefits." *Peery v. Rutledge,* 177 W.Va. 548 at 550 n. 2, 355 S.E.2d 41 at 43 n. 2 (1987) (citation omitted).

**2.** The employer's written policy and procedures provide that an employee must obtain supervisory approval before accepting for deposit any check for an amount over $2,500.

**3.** The employer also submitted written statements from two customers complaining that the appellee had been very rude and disrespectful to them. Additionally, John Ellison, the Assistant Manager of Consumer Banking Operations, testified about a memorandum he prepared detailing a meeting he had had with a customer of the bank, Seureda White. On March 10, 1987, Ms. White met with Mr. Ellison and complained that the appellant had treated her rudely.

A refusal to comply with a job assignment directive or a work rule may constitute "misconduct" for unemployment compensation purposes. Not every such refusal, however, constitutes such "misconduct."

*Peery v. Rutledge*, 177 W.Va. at 551, 355 S.E.2d at 44. Each case must be judged on its own merits. "If the former employer establishes that the unemployment compensation claimant has violated an ordinarily reasonable job assignment directive or work rule, the burden of going forward with the evidence shifts to the claimant to show that he or she was justified, or at least exercised good faith, in not complying with the directive or rule." Syllabus point 3, in part, *Peery v. Rutledge, supra.*[4]

In the instant matter, the employer's manual of policy and procedures clearly set forth the necessary steps an employee must follow before accepting for deposit a check for an amount over $2,500. The employee was aware of this policy and deliberately disobeyed this work directive. Although the employee claimed that she did not obtain supervisory approval because her supervisor was not in the bank when the customer wanted to make the deposit, there was testimony that an acting supervisor was available to approve the check. We have reviewed the record and find that the employee's failure to follow the work rule was unreasonable. *See Bailey v. Rutledge*, 174 W.Va. 476, 327 S.E.2d 456 (1985).[5]

▮ Moreover, the Board found that this act of misconduct constituted "gross misconduct" under W.Va.Code § 21A-6-3(2) because the employee had received a prior written warning that termination would result from such act.[6] As we noted in syllabus point 2, in part, of *Kisamore v.*

**4.** For example, it would not be misconduct for an employee to refuse a job task if he had a reasonable fear of harm to himself or to others. *Peery v. Rutledge, supra.*

**5.** Contrary to the circuit court's findings, there was sufficient evidence presented, which was not hearsay, regarding the appellee's failure to follow bank procedure.

**6.** Although the prior written notice was not admitted into evidence, the appellee nevertheless

*Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981):

Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong;

*See* W.Va.Code § 21A-7-25 (1984). We have reviewed the record in this case and note that the findings of fact by the Board were not plainly wrong. Accordingly, the decision of the Circuit Court of Kanawha County is reversed.

Reversed.

stated in the fact finding report prepared by the West Virginia Department of Employment Security that she had received prior written notice regarding her failure to follow company procedures. The employee further acknowledged that the notice warned her that if any of these incidents occurred again, she would be terminated. Based on this admission, both the Board and circuit court accepted this evidence as true.