490 S.E.2d 743

**METROPOLITAN LIFE INSURANCE CO., Petitioner Below, Petitioner,**

v.

**Cathy S. GATSON, Clerk of the Circuit Court of Kanawha County; the Board of Review of the West Virginia Department of Employment Security; James G. Dillon, Chairman; Phyllis Carter and G. Charles Hughes, Members; Andrew N. Richardson, Commissioner of West Virginia Department of Employment Security; and William Cutright, Respondents Below, Respondents.**

No. 23365.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 29, 1997.

Decided July 14, 1997.

Dissenting Opinion of Chief Justice Workman July 15, 1997.

David S. Russo, Michael A. Kawash, Robinson & McElwee, Charleston, for Petitioner.

James A. Varner, Harold M. Sklar, McNeer, Highland, McMunn & Varner, Clarksburg, for Respondent William Cutright.

PER CURIAM:

Metropolitan Life Insurance Company ("Metropolitan") appeals the award of unemployment benefits to William Cutright, a former sales representative for Metropolitan.[1] On appeal Metropolitan maintains that Mr. Cutright should be disqualified from benefits

---

1. This appeal comes to this Court on a writ of certiorari. *W. Va.Code,* 21A–7–27 [1970] states:

The appeal from the decision of the circuit of Kanawha county may be taken to the supreme court of appeals if a proper petition for certiorari is filed within sixty days of the date of the final decision of the circuit court of Kanawha county. The cases shall go from the circuit court of Kanawha county only on writ of certiorari and need be heard only at the session of the supreme court.

for seven weeks because he was discharged for insubordination. When the record is viewed in light of the remedial nature of unemployment compensation statutes, we find that the conclusion of law of the Circuit Court of Kanawha County and the Board of Review of the West Virginia Department of Employment Security is correct, and therefore, we affirm the decision of the circuit court awarding Mr. Cutright unemployment benefits.

## I.

### Facts and Background

Although there is considerable dispute between the parties about the employment relationship between Metropolitan and Mr. Cutright, the facts relevant to this appeal are limited to the question of Mr. Cutright's alleged insubordination.[2] Mr. Cutright began working for Metropolitan on April 3, 1988 and at various times served as a branch manager and a sales representative. At the time of his discharge on October 14, 1994, Mr. Cutright was a sales representative.

As a sales representative, Mr. Cutright privately retained and paid Shellie Davis to work as his personal assistant in the Metropolitan office. Ms. Davis' responsibilities included accessing information on the policies of Mr. Cutright's clients held in Metropolitan's "sonic computer." Sometime in July 1994, William Thomas, Metropolitan's Branch Manager, saw Ms. Davis using the sonic computer with Mr. Cutright viewing the screen over her shoulder. Mr. Thomas informed Mr. Cutright that Ms. Davis' access to the sonic computer was improper. Mr. Thomas testified that sometime after the July 1994 incident, he may have "caught" Ms. Davis using the sonic computer in Mr. Cutright's absence.

On September 2, 1994, Mr. Cutright received an electronic message from Metropolitan Regional Executive Michael Schlegel stating the access to the sonic computer was limited to Metropolitan employees. Mr. Cutright disagreed with the limitation based on his experience as a branch manager. On September 20, 1994, Mr. Schlegel sent an electronic message to all the Metropolitan employees in the region telling them that non-Metropolitan employees were not to have access to the sonic computer.

Mr. Thomas, the branch manager, testified that the purpose of September 20, 1994 message was "to make sure that if there was any question in anybody's mind that in fact this is how Met Life mandates use of the sonic." Mr. Thomas did not indicate any other Metropolitan policy addressing the question of access to the sonic computer. When Mr. Thomas was asked if Ms. Davis had accessed the sonic computer after the September 20, 1994 directive, he answered that he did not know.[3]

---

**2.** In addition to this appeal of the award of unemployment benefits to Mr. Cutright, the parties have two additional appeals pending before this Court. The other appeals arise from Mr. Cutright's wrongful discharge suit against Metropolitan. *See Cutright v. Metropolitan Life Ins. Co.,* —— W.Va. ——, 491 S.E.2d 308 (1997). This unemployment appeal arose in a separate and distinct unemployment proceeding that is unrelated to the other appeals, which are based on matters heard by the Circuit Court of Harrison County.

**3.** The following testimony was given by Mr. Thomas at the January 25, 1995 hearing before the administrative law judge for unemployment benefits:

Q (Mr. Sklar, Counsel for Mr. Cutright) Well, I understand what it says, to clarify. If that's the rule, why does it need clarification?

A (Mr. Thomas) You know, to reenforce. You know, look, this is what the rule is. This is it. This is the mandate that Met has, we

have to adhere to it. That's why, I'm assuming, he did that.

Q But you don't know why? You don't have anything in a manual of instruction, for example? He doesn't reference the manual of instruction, which is your bible, that says pursuant to page 54 of the manual of instruction nobody but Met Life employees can use sonic, correct?

A No, he did not reference that.

Q And you don't have anything between the 20th of September until the 14th, a three week period of time, to Mr. Cutright saying, Bill, you're in violation of the pronouncement on September 20, I caught you, I caught Shellie using that again. Correct?

A No. We might have had verbal discussions again. I didn't—

Q But you don't know?

A Right.

Q And you don't know what date those verbal discussions were?

A From July to the time he was terminated.

After Mr. Cutright was discharged on October 14, 1994 for behavior unbecoming to a sales representative and for insubordination, he filed for unemployment benefits, which were initially granted.[4] Metropolitan appealed and the matter was heard by an administrative law judge who found that the "complaints about the claimant's conduct ... did not amount to disqualifying misconduct" and that the "continued use of the computer by the claimant's private employee ... does amount to insubordination which in turn amounts to disqualifying misconduct." Based on the alleged insubordination, the administrative law judge found Mr. Cutright eligible but disqualified for benefits "for the week of the discharge and the six weeks immediately following thereafter."

Mr. Cutright appealed the denial to the Board of Review, which found Mr. Cutright was not disqualified because the computer was not used "after the employer requested that the claimant's private secretary not use the sonic computer." The Board of Review also found the allegation of unbecoming conduct was not substantiated by Metropolitan. Metropolitan then appealed only the "insubordination issue" to the circuit court, which affirmed the Board of Review and adopted the Board's findings of fact and conclusions of law with one exception. The circuit court found that although Mr. Cutright permitted his personal secretary to use the sonic computer until Mr. Cutright received the written notification of the policy he requested, no improper access was done after written notice was given.

Metropolitan then appealed to this Court alleging: first, that the circuit court erred as a matter of law in finding that Mr. Cutright's conduct did not rise to the level of "actionable misconduct;" second, that the circuit court employed an improper standard of review; and third, that the circuit court erred in considering additional evidence.[5]

## II.

### Discussion

 Our standard of review for a decision of the Board of Review was stated in Syllabus Point 3, *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994).

The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo.*

*Accord* Syllabus Point 3, *Smittle v. Gatson,* 195 W.Va. 416, 465 S.E.2d 873 (1995). *See Philyaw v. Gatson,* 195 W.Va. 474, 476, 466 S.E.2d 133, 135 (1995); *W.Va.Code* 21A–7–21 [1943].

 In this case, the circuit court correctly reviewed the Board's findings of fact under a clearly wrong standard, which is the

---

Q Right, but you don't know—
A (inaudible) continuous.
Q But you don't know if they were after the 20th of September?
A No, I don't.
Q So it may well have been that after receipt of this electronic mail on September 20 until he was terminated some three weeks later that perhaps Shellie Davis did not access sonic?
A Shellie Davis was accessing sonic— again, I can give you probably a more specific date, but—
Q But a moment ago you said you didn't know whether between this date and his termination whether she accessed sonic.
A No, I—I mean I don't know the date, no, sir. It was after three months of, you know, letters and talks.

4. Metropolitan also alleged that Mr. Cutright engaged in conduct unbecoming one of its sales representatives. The alleged conduct included a comment about a female clerk made outside the office building and loudly talking in the office. This issue was rejected by the administrative law judge and the Board of Review. In its appeal to the circuit court, Metropolitan did not appeal the Board of Review's rejection of the unbecoming conduct discharge argument. Because the unbecoming conduct issue is not before this Court in this appeal, the issue is not considered in this appeal.

5. In our review of the record, we found no evidence that the circuit court considered the additional evidence submitted by Mr. Cutright, and therefore, we find no merit in this assignment of error.

same standard we apply to the findings of fact adopted by the circuit court. However, we apply a *de novo* review to the legal conclusion of Board of Review and the circuit court that the claimant's conduct was not "misconduct" for the purposes of disqualifying him from seven (7) weeks of unemployment compensation benefits.

■ We begin by noting that the unemployment compensation law should be liberally construed in order to further its remedial purpose. Syllabus Point 6, *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954) states: "Unemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." *Accord* Syllabus Point 2, *Smittle v. Gatson*, *supra*; Syllabus, *Mercer County Bd. of Educ. v. Gatson*, 186 W.Va. 251, 412 S.E.2d 249 (1991).

■ Metropolitan seeks to have the claimant disqualified from receiving benefits for seven weeks by virtue of *W.Va.Code*, 21A–6–3 [1990], which provides, in pertinent part:

Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:

\* \* \* \* \* \*

(2) For the week in which he was *discharged from his most recent work for misconduct* and the six weeks immediately following such week; or for the week in which he was discharged from his last thirty-day employing unit for misconduct and the six weeks immediately following such week. Such disqualification shall carry a reduction in the maximum benefit amount equal to six times the individual's weekly benefit.

The issue before this Court is whether Mr. Cutright's actions constitute misconduct within the meaning of the statute. We adopted the following definition of misconduct in *Kirk v. Cole*, 169 W.Va. 520, 524, 288 S.E.2d 547, 550 (1982), *quoting, Carter v. Michigan Employment Security Commission*, 364 Mich. 538, 111 N.W.2d 817 (1961):

[Misconduct is] conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute.

In this case, we find that Mr. Cutright's continued use of a privately retained and paid secretary to access Metropolitan private files via the sonic computer after verbal warnings, but before a written confirmation of the prohibition does not constitute "misconduct" within the meaning of the statute. If Mr. Cutright had continued to allow his privately retained secretary to access Metropolitan's records after receiving written conformation of the prohibition, such acts would constitute "misconduct" because they would be a deliberate violation of the company policy and they would "show an intentional and substantial disregard of the employer's interest." *Kirk v. Cole, id.*

Given the record, especially the testimony of Mr. Thomas, we find that the circuit court's finding of fact that after Mr. Cutright received written confirmation of the denial of access to company records for all non-employees on September 20, 1994, he did not violate the policy is not clearly wrong. We find that the circuit court correctly determined that Mr. Cutright's actions of allowing his privately retained secretary to access company records which occurred before he had written notice of the company policy did not constitute "misconduct" under *W.Va. Code*, 21A–6–3 [1990] so as to deny him seven weeks of unemployment benefits.

Accordingly, we affirm the judgment of the Circuit Court of Kanawha County affirming the final order of the Board of Review.

Affirmed.

WORKMAN, C.J., dissents and reserves the right to file a dissenting opinion.

WORKMAN, Chief Justice, dissenting:

While the majority correctly identifies the issue for the Court's resolution as a legal determination of whether Mr. Cutright's conduct legally rises to the level of misconduct contemplated by West Virginia Code § 21A-6-3 (1996) to permit disqualification from unemployment benefits, I must respectfully dissent because I conclude that the requisite misconduct *was* established. The majority places great stock in the fact that Mr. Cutright curtailed the wrongful use of the sonic computer by his personal assistant following the issuance of a written rule regarding the nonauthorization of the computer system's use by individuals other than Metropolitan employees. Why the majority concludes that it was permissible for Mr. Cutright to be insubordinate to his superior's directive regarding a company work rule prior to the time a written company directive was issued is incomprehensible to me.

This Court recognized in *Peery v. Rutledge*, 177 W.Va. 548, 355 S.E.2d 41 (1987) that "[a] refusal to comply with a job assignment directive or a work rule may constitute 'misconduct' for unemployment compensation purposes." *Id.* at 551, 355 S.E.2d at 44. We explained in *Peery* that the "job assignment directive or work rule must be reasonable under the particular circumstances, and the unemployment compensation claimant's reason for disregarding the job assignment directive or work rule must be examined to determine whether the claimant was justified, or at least exercised good faith, in not complying with the directive or rule." *Id.* The burden is placed on the claimant to prove that "he or she was justified, or at least exercised good faith, in not complying with the directive or rule." 177 W.Va. at 552, 355 S.E.2d at 45.

Because the majority failed to consider whether Mr. Cutright's failure to obey an oral directive regarding a work rule constituted misconduct, I find the majority's reasoning to be flawed. There is simply no basis for the majority's implication that a deliberate violation of company policy cannot result absent a written policy. Whether the directive was oral or written, the failure of Mr. Cutright to comply with his supervisor's instructions regarding use of the sonic computer qualifies as misconduct within the definition adopted by this Court in *Kirk v. Cole*, 169 W.Va. 520, 288 S.E.2d 547 (1982), as it clearly constituted both a flagrant disregard of a standard of behavior that Metropolitan had a right to expect and a disregard of his obligations to his employer. *See id.* at 524, 288 S.E.2d at 550.

Moreover, the majority wrongly decided to gloss over the additional allegations of misconduct involving Mr. Cutright's habit of making derogatory and demeaning comments with regard to a female clerk and his boisterous and profane demeanor within the office. The existence of these allegations certainly should have been considered in determining whether Mr. Cutright was entitled to unemployment benefits since that conduct was part of the initial evidence used to support the employer's position that his misconduct barred him from receiving benefits for the period of time provided by statute. *See W. Va. § 21A-6-3.*

It is amazing how frequently we are seeing instances of abusive people being rewarded by the legal system for their abusive behavior.