408 S.E.2d 610

**June A. SHIVELY, Appellant
Below, Appellant,**

**v.**

**Cathy S. GATSON, Clerk of the Circuit
Court of Kanawha County; the Board
of Review of the West Virginia Depart-
ment of Employment Security; James
Dillon, as Chairman; Linda A. Grubb
and D.B. Daugherty, Members; Andrew
N. Richardson, as Commissioner of the
West Virginia Department of Employ-
ment Security; and Tri–State Grey-
hound Park, Appellees Below, Appel-
lees.**

**No. 19944.**

Supreme Court of Appeals
of West Virginia.

Submitted May 15, 1991.

Decided July 9, 1991.

Rehearing Denied Sept. 5, 1991.

James F. Wallington, Charleston, for ap-
pellant.

Jack O. Friedman, Charleston, for appel-
lee Board of Review.

Ricklin Brown, Charleston, for appellee Tri–State Greyhound Park.

PER CURIAM:

This is an appeal by June A. Shively from a September 24, 1990, final order of the Circuit Court of Kanawha County affirming a decision of the Board of Review of the West Virginia Department of Employment Security (hereinafter referred to as Board of Review) denying the appellant unemployment compensation benefits. The appellant contends that the lower court erred in affirming the Board of Review and that the Board of Review was clearly wrong in finding that the appellant's employer met its burden of proving that the appellant was engaged in gross misconduct disqualifying her from unemployment compensation benefits pursuant to W.Va.Code § 21A–6–3(2) (1989).[1] We disagree with the contentions of the appellant and affirm the decision of the Circuit Court of Kanawha County.

I.

The appellant's employment as a mutual teller at Tri–State Greyhound Park was terminated due to an alleged incident occurring on December 31, 1988. Prior to that date, allegations had purportedly been raised by fellow workers and track patrons that the appellant had shortchanged patrons by taking winning tickets, informing patrons that the tickets were not winners, and retaining the proceeds of the winning tickets. On December 31, 1988, Gary Burdette, Director of Safety and Security for the employer, Charles Hughes, Chief Inspector of the West Virginia State Racing Commission, and Harry Eugene Sigman,

licensed private investigator, devised a method through which the appellant's alleged behavior could be tested.[2] Following the twelfth race, Mr. Sigman was provided with five betting tickets, two of which were winning tickets and three of which were losing tickets. Mr. Sigman testified that he presented the five tickets to the appellant and requested the appellant to determine whether he had any winners in his group of five tickets. According to the testimony of Mr. Sigman, the appellant processed the tickets through her computer and informed Mr. Sigman that he had one winning ticket for which he was paid $17.00. The other winning ticket, worth $21.50, was allegedly placed aside by the appellant, and the appellant did not inform Mr. Sigman that he had any additional winning tickets. With regard to the three losing tickets, however, the appellant informed Mr. Sigman that they were losing tickets and processed them a second time to confirm their status. No further mention of the $21.50 winning ticket was made, and Mr. Sigman walked away with only the proceeds of one winning ticket. When the computer record of the appellant's transactions was later analyzed, the record indicated that the $21.50 had been paid. Furthermore, when the appellant's cash drawer was checked after approximately sixty-seven more transactions, the drawer balanced to within $1.10.

Based upon the alleged theft of $21.50, the appellant was discharged. After subsequent hearings to determine the appellant's entitlement to unemployment compensation benefits, Deputy Commissioner J. Walton of the West Virginia Department of Employment Security found that the em-

---

1. In pertinent part, W.Va.Code § 21A–6–3(2) provides that an individual shall be disqualified for benefits and remain disqualified for benefits until he has thereafter worked for at least thirty days in covered employment if he has been discharged for theft or larceny. Although W.Va.Code § 21A–6–3 was amended in 1990, the amendments did not affect the language relevant to this proceeding.

2. Mr. Sigman was asked to present tickets to the appellant twice during the evening races. Mr. Sigman was not compensated for his work of presenting the tickets to the appellant. He was

a patron of the track and had previously served on the South Charleston police force with Gary Burdette. Mr. Sigman had also served as a fraud investigator with the West Virginia Securities Commission for five years. During the first transaction, following the eighth race, Mr. Sigman was given four betting tickets, including three losers and one winner worth $110.00. Mr. Sigman presented the four tickets to the appellant and was paid $110.00 without further incident. These proceedings arose as a result of what transpired on the second transaction.

ployer had failed to present sufficient evidence to show misconduct in connection with the appellant's discharge and determined that the appellant was eligible for unemployment benefits. On appeal to the Administrative Law Judge of the Board of Review, the decision of the deputy was reversed, and Administrative Law Judge David M. Pancake found that the appellant was disqualified from benefits for gross misconduct described as theft. The Administrative Law Judge heard testimony from all individuals involved in the incident, issued extensive findings of fact, and determined that the "facts in this case lead to the inescapable conclusion that the claimant was guilty of theft as provided in the gross misconduct provision of [W.Va.Code § 21A–6–3(2)]...." In a subsequent appeal to the Board of Review, the decision of the Administrative Law Judge was affirmed. The Circuit Court of Kanawha County then affirmed that decision, and an appeal to this Court followed.

The appellant contends (a) that the employer failed to show gross misconduct in the form of theft or larceny, and (b) that the testimony on behalf of the employer is inconsistent and should not be credited. The appellant directs our attention to the testimony of Mr. Sigman and stresses that although Mr. Sigman testified that he had left the appellant's window with three losing tickets and $17.50, he does not state specifically that the appellant failed to pay him the $21.50 in question.[3] The appellant also maintains that the employer failed to prove that she actually "took and carried away" the $21.50 in question, an element necessary to the proof of the crime of larceny. See Syllabus, State v. Houdeyshell, 174 W.Va. 688, 329 S.E.2d 53 (1985). The appellant submits, for instance, that the employer did not negate the possibility of human error in the transaction.

The appellant also claims that Mr. Sigman intermingled his personal funds with

the track funds during the scheme designed to test the appellant. Mr. Sigman was apparently also placing personal bets on the date in question. The appellant attempts to discredit the testimony of Mr. Sigman by comparing Mr. Sigman's testimony regarding the personal transactions with the testimony of Mr. Burdette. Mr. Burdette testified that he did not see Mr. Sigman place his hands in his pockets during the entire transaction with the appellant. Mr. Sigman, however, testified that he purchased a $2.00 ticket and placed it in his shirt pocket. The appellant contends that this indicates that Mr. Sigman intermingled his own money with the track's money during the exchange and discredits the testimony of Mr. Sigman.

Furthermore, the appellant attempts to discredit Mr. Sigman's testimony by comparing his statement regarding the order of presentation of the tickets to the computerized record. Mr. Sigman testified that the $21.50 winning ticket and the $17.00 winning ticket were run immediately after one another with only a few seconds interval. The computer record, however, indicates an eighteen second gap between the $21.50 ticket and the $17.00 ticket. The appellant contends that these inconsistencies detract from Mr. Sigman's credibility.

The appellant further contends that the testimony of other witnesses regarding the appellant's previous shortchanging of other customers was not to be credited. Although the appellant objected to evidence of prior consistent behavior, evidence was admitted indicating that the appellant had received an employee warning in May 1988 based upon an alleged customer complaint in January 1988. On cross-examination, however, the appellant's personnel manager, William Howard, testified that the patron who had made the complaint against the appellant had been out of town and was unavailable to make any statement against the appellant. Mr. Howard eventually de-

---

**3.** Mr. Sigman testified that the appellant informed him that he had one winning ticket, worth $17.00, that no mention of the $21.50 ticket was made, and that he walked away from the counter with only the $17.00 and the three losing tickets. Thus, while Mr. Sigman may

have not explicitly stated the words "she did not give me the $21.50," he certainly explained that he did not receive the $21.50 at a time when his ticket would have entitled him to receive that amount. We find the appellant's argument to the contrary unconvincing.

termined that no wrongdoing could be proven, and, furthermore, that the incident may not have occurred in the manner complained of by the patron. Consequently, Mr. Howard determined that the appellant should only be warned and that no further action should be taken because the track was unable to produce the complaining patron. The $65.40 in question at that time was subsequently charged to an uncollectible account.[4]

Additionally, the appellant maintains that her discharge may have been in retaliation for her activity on behalf of the United Steelworkers of America. The appellant testified that she had been threatened with discharge two weeks prior to the December 31, 1988, incident for discussing with other tellers the ramifications of an economic strike or an unfair labor walkout of tellers represented by the United Steelworkers of America. The appellant introduced no evidence to challenge the allegation of theft and did not testify in her own behalf.

## II.

■ " 'Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong....'" Syllabus point 2, in part, *Kisamore v. Rutledge*, 166 W.Va. 675, 276 S.E.2d 821 (1981)." Syllabus, *Helm v. Gatson*, 180 W.Va. 625, 378 S.E.2d 667 (1989). The Board of Review based its conclusion of disqualification for unemployment compensation benefits exclusively upon the evidence regarding the December 31, 1988, incident. The Board of Review specifically found that "[t]he other testimony, concerning alleged union activities, and earlier incidents involving the claimant's conduct at

work, is not considered material." The Board of Review further found that the Administrative Law Judge "correctly credited the testimony of Mr. Sigman, and correctly found as a matter of fact that the claimant had stolen money from customers of the employer...." The Board of Review consequently affirmed the decision of the Administrative Law Judge to the effect that the appellant was disqualified from receiving unemployment compensation benefits.

■ We do not believe such findings to be plainly wrong. The essence of the claim against the appellant is her activity on December 31, 1988, as evidenced primarily by the testimony of Mr. H.E. Sigman. As also recognized by the Board of Review, the alleged prior misconduct of the appellant is not at issue. While the alleged prior misconduct may serve a purpose as a foundational explanation for the employer's suspicion of the appellant and the formulation of a plan by which her activity could potentially be discovered, the prior conduct does not serve as a basis for a decision of disqualification for unemployment compensation benefits and does not enter into our analysis.

■ Similarly, while the appellant attempts to raise the issue of her union activity as an improper basis for her discharge, there is no evidence that the Tri–State Greyhound Park discharged the appellant for union activity. While the appellant had allegedly been threatened with discharge for explaining the ramifications of an economic strike or an unfair labor practice walkout, the personnel manager for Tri–State Greyhound Park testified that the only time the issue of union activity was raised with the appellant was on or about December 17, 1988.[5] At that time, the

4. Furthermore, the appellant contends that other rumors of previous shortchanging of customers were unsubstantiated. Ms. Wendy Layne, another teller, testified that she observed a Mr. Edwin Reynolds, patron of the track, cashing a winning ticket on one occasion and using the proceeds to purchase tickets for future races. According to Ms. Layne's testimony, the appellant informed him that he owed another sum of money. Ms. Layne later observed the appellant taking $11.00 out of her receipts box.

5. The appellant presented the testimony of Mr. Dallas Elswick, a representative of the United Steelworkers of America, to the effect that the appellant informed him that she had been threatened with discharge if she continued to provide information regarding union activities to co-workers. William Howard, the appellant's personnel manager, however, testified that he did not advise the appellant that she would be

personnel manager apparently felt that the appellant had provided other employees with misleading information regarding union activities and called the appellant into his office for a discussion of those matters. Furthermore, Wendy Layne, both a member and secretary of the union, testified that she had experienced no intimidation or reprisals related to her union activities.[6]

With regard to the appellant's attempt to discredit the testimony of employer witnesses by exposing minute inconsistencies, we find these arguments to be meritless. While the time lapse between the purchases and the possible intermingling of track funds with Mr. Sigman's personal funds is relevant to a determination of the factual scenario, we do not find the slight inconsistencies raised by the appellant convincing. The Administrative Law Judge and the Board of Review accumulated all available evidence prior to making a final determination. That evidence was evaluated in light of all circumstances surrounding the incident in question, and a conclusion was reached.

■ Regarding the relevant inquiry of the appellant's December 31, 1988, conduct, the evidence established that the appellant was presented with two winning tickets and paid the holder of those tickets for only one winning ticket. As stressed by the appellant, Mr. Sigman never explicitly stated that the appellant failed to pay him the $21.50 for the second winning ticket. Mr. Sigman did explicitly state, however, that he walked away from the window with three losing tickets and $17.00 for one winning ticket. Mr. Sigman further stated that no mention was made of the $21.50 or the second winning ticket and that the appellant had lain the second winning ticket

aside and had processed the three losers again to confirm their losing status. Furthermore, had the failure to have paid the successful bet been an honest error, appellant's cash box should have reflected an overage in an amount approximating the unpaid bet, absent errors subsequent to the transaction in question.[7]

These factual findings led the Board to its conclusion that the appellant had engaged in gross misconduct by taking the $21.50 and that she was consequently disqualified from unemployment compensation benefits for that misconduct. We do not believe that these findings are plainly wrong, and we therefore affirm the decision of the Circuit Court of Kanawha County.

Affirmed.

---

terminated if she continued to provide information.

**6.** Dallas Elswick testified that the claimant had approached him to assist in organizing the workers at the dog track during the summer of 1987. Mr. Elswick stated that he did not personally inform the track officials that the appellant was a member of the organizing committee. There is neither evidence indicating that the appellant was reprimanded for this behavior nor that she suffered any negative ramification whatsoever.

**7.** As recognized by the Board of Review, "the electronic records kept by the employer, coupled with the detective's testimony, would make it almost incredibly coincidental that the claimant would run a winning ticket through her machine, see that it is a payout, somehow neglect to tell the bettor that it was a winner, while paying him for another ticket, and then make other errors in her work so that her records would come out indicating that the ticket had in fact been paid."