620 S.E.2d 169

**HERBERT J. THOMAS MEMORIAL HOSPITAL, Appellant,**

**v.**

**BOARD OF REVIEW OF THE WEST VIRGINIA BUREAU OF EMPLOYMENT PROGRAMS; James G. Dillon, as Chairman Thereof; James Sago and Carole A.L. Bloom, as Members Thereof; Greg Burton, Commissioner of the Bureau of Employment Programs; and James M. Kirk, Appellees.**

No. 32054.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 2005.

Decided June 10, 2005.

Charles M. Surber, Jr., Brian J. Moore, Jackson Kelly P.L.L.C., Charleston, for the Appellant.

PER CURIAM.

Herbert J. Thomas Memorial Hospital (hereinafter "Thomas" or "the hospital"), appeals from an order entered March 18, 2004, by the Circuit Court of Kanawha County. By that order, the circuit court affirmed the decision of the Board of Review of the West Virginia Bureau of Employment Programs (hereinafter "Board"), finding that the misconduct committed by Thomas' former employee, James Kirk (hereinafter "Mr. Kirk"), did not rise to the level of gross misconduct. Accordingly, the Board found, and the circuit court affirmed, that Mr. Kirk was entitled to receive unemployment compensation benefits pursuant to the guidelines set forth in W. Va.Code § 21A–6–3(2) (1990) (Repl.Vol.2002). On appeal, Thomas argues that theft is gross misconduct;[1] therefore, Mr. Kirk should not receive unemployment benefits for his termination from Thomas for stealing food from the cafeteria. Based upon the parties' arguments,[2] the record designated for our consideration, and the pertinent authorities, we reverse the decision of the circuit court.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Kirk was employed by Thomas on January 5, 1995, as a maintenance person on the night shift. Mr. Kirk admitted that, during his employment, he removed food items from the hospital cafeteria without paying for them. He stated that he was allowed by the cashier to take food from the cafeteria without paying for it, an allegation that is denied by the cafeteria's cashier. Mr. Kirk further admitted that he would unlock the cafeteria during its nonbusiness hours and take food without anyone's knowledge. The hospital was alerted to the situation in April 2003.

During this time, Mr. Kirk was also having work performance-related problems. A meeting was held between Mr. Kirk and hospital personnel regarding his performance-related troubles, and, during this meeting, Mr. Kirk admitted he had been taking food from the cafeteria without paying for it. Mr. Kirk, however, claimed that he always returned to the cafeteria at a later time to pay for the food. Thomas then spoke with a witness identified by Mr. Kirk and learned that Mr. Kirk had approached this witness and asked her to lie on his behalf. The witness declined to lie for Mr. Kirk and stated that Mr. Kirk did not return at later dates to pay for food he had previously removed from the premises. When Thomas investigated and confirmed that Mr. Kirk had removed food without paying for it, the hospital terminated Mr. Kirk's employment effective April 27, 2003.[3]

Mr. Kirk filed for unemployment compensation benefits. On May 13, 2003, the Deputy Commissioner ruled that Mr. Kirk was not entitled to receive unemployment benefits because he had committed theft, which is a form of gross misconduct under W. Va.Code § 21A–6–3(2). Mr. Kirk appealed, and a hearing was held before an administrative law judge. All parties were present and submitted evidence, and the administrative

---

1. If an individual has been discharged for gross misconduct, W. Va.Code § 21A–6–3(2) provides that an individual shall be disqualified from receiving unemployment compensation benefits and shall remain disqualified for benefits until he has worked for at least thirty days in covered employment.

2. We note that only Thomas filed a brief before this Court. No appellee filed any responsive brief for our consideration; therefore, we rely on the designated record for our review of the appellees' arguments.

3. The cause of termination was theft, and was not related to any work performance issues.

law judge affirmed the findings and rulings of the Deputy Commissioner.

Mr. Kirk then appealed to the Board, which issued an opinion on August 11, 2003, that reversed the decision of the administrative law judge. The Board found that while Mr. Kirk committed an act of misconduct when he removed items from the cafeteria without paying for them, he committed acts of simple misconduct as opposed to gross misconduct. The Board's opinion was based on its assumption that other hospital employees also had removed food from the hospital without paying for the items. Thomas appealed to the Circuit Court of Kanawha County, claiming that the Board's decision was erroneous and arguing that theft automatically equals gross misconduct. The circuit court affirmed the Board, finding that Mr. Kirk's conduct was not willful, wanton, or deliberate in nature and, therefore, did not constitute gross misconduct. Thomas asserts on appeal to this Court that Mr. Kirk committed theft, and further, that theft is automatically gross misconduct.

## II.

## STANDARD OF REVIEW

■ This case is before this Court on appeal from the circuit court's order affirming the decision of the Board. We have held:

> The findings of fact of the Board of Review of the West Virginia [Bureau of Employment Programs] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and

the standard of judicial review by the court is *de novo.*

Syl. pt. 3, *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994). Therefore, we examine the factual determination that Mr. Kirk took food without paying for it under a clearly wrong standard, and we examine the legal determination that theft is not gross misconduct under a *de novo* standard of review.

■ Further guidance is provided in our recognition that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syl. pt. 6, *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954). *Accord Mercer County Bd. of Educ. v. Gatson,* 186 W.Va. 251, 412 S.E.2d 249 (1991) (per curiam); *London v. Board of Review of Dep't of Employment,* 161 W.Va. 575, 244 S.E.2d 331 (1978). "Disqualifying provisions of the Unemployment Compensation Law are to be narrowly construed." Syl. pt. 1, *Peery v. Rutledge,* 177 W.Va. 548, 355 S.E.2d 41 (1987). Moreover, "the burden of persuasion is upon the former employer to demonstrate by the preponderance of the evidence that the claimant's conduct falls within a disqualifying provision of the unemployment compensation statute." *Peery,* 177 W.Va. at 552, 355 S.E.2d at 45 (internal citations omitted). Mindful of these applicable standards, we now consider the parties' arguments.

## III.

## DISCUSSION

■ West Virginia Code § 21A–6–3 [4] provides for an individual's disqualification

---

4. W. Va.Code § 21A–6–3(2) (1990) (Repl.Vol. 2002) provides, in pertinent part:

> Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:
>
> ....
>
> (2) For the week in which he was discharged from his most recent work for misconduct and the six weeks immediately following such week; or for the week in which he was discharged from his last thirty-day employing unit for misconduct and the six weeks immediately following such week. Such disqualification shall carry a reduction in the maximum benefit amount equal to six times the individu-

al's weekly benefit. However, if the claimant returns to work in covered employment for thirty days during his benefit year, whether or not such days are consecutive, the maximum benefit amount shall be increased by the amount of the decrease imposed under the disqualification; except that:

> If he were discharged from his most recent work for one of the following reasons, or if he were discharged from his last thirty days employing unit for one of the following reasons: Misconduct consisting of willful destruction of his employer's property; assault upon the person of his employer or any employee of his employer; if such assault is committed at such individual's place of employment or in the

from unemployment compensation benefits for misconduct. Thomas argues that Mr. Kirk committed acts of gross misconduct; whereas, the circuit court found that Mr. Kirk's actions arose only to the level of simple misconduct. The level of misconduct determines the level of unemployment compensation benefits available to a claimant. Individuals are disqualified from obtaining unemployment benefits for six weeks if the termination of their employment was due to misconduct and are disqualified indefinitely if the termination was due to gross misconduct. W. Va.Code § 21A–6–3(2).

For purposes of determining the level of disqualification for unemployment compensation benefits under West Virginia Code § 21A–6–3, simple misconduct is conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

Syl. pt. 7, *Dailey v. Board of Review, W. Va. Bureau of Employment Programs,* 214 W.Va. 419, 589 S.E.2d 797 (2003). Moreover,

[f]or purposes of determining the level of disqualification for unemployment compensation benefits under West Virginia Code § 21A–6–3, an act of misconduct shall be considered gross misconduct where the underlying misconduct consists of (1) willful destruction of the employer's property; (2) assault upon the employer or another employee in certain circumstances; (3) certain instances of use of alcohol or controlled substances as delineated in West Virginia Code § 21A–6–3; (4) arson, theft,

larceny, fraud, or embezzlement in connection with employment; or (5) any other gross misconduct which shall include but not be limited to instances where the employee has received prior written notice that his continued acts of misconduct may result in termination of employment[.]

Syl. pt. 4, in part, *Dailey, id.*

■ We must therefore decide whether the action that prompted Thomas' termination of Mr. Kirk constituted simple misconduct or gross misconduct. It is undisputed that Mr. Kirk removed food from the cafeteria without paying for it. We have previously held that "[t]o support a conviction for larceny at common law, it must be shown that the defendant took and carried away the personal property of another against his will and with the intent to permanently deprive him of the ownership thereof." Syl. pt. 3, *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981), *overruled on other grounds by* Syl. pt. 6, *State v. Jenkins,* 191 W.Va. 87, 443 S.E.2d 244 (1994). In another unemployment compensation case, we applied this holding to determine that a claimant did not commit theft or larceny when he took property that had been abandoned, finding that the claimant did not take property against the will of the owner with the intent to permanently deprive the owner of ownership of the property. *See* Syl. pt. 4, *Summers v. Gatson,* 205 W.Va. 198, 517 S.E.2d 295 (1999) (per curiam). The record in the instant case is clear that Mr. Kirk took items from the cafeteria without permission from a supervisor and without paying for them. Mr. Kirk justifies his behavior by stating that the cashier allowed him to take food without paying for it. However, even if true, that excuse does not apply to the situations where Mr. Kirk used a master key to unlock the cafeteria when it was closed and proceeded to take food. Therefore, we find that Mr. Kirk committed

course of employment; reporting to work in an intoxicated condition, or being intoxicated while at work; reporting to work under the influence of any controlled substance, or being under the influence of any controlled substance while at work; arson, theft, larceny, fraud or embezzlement in connection with his work; or any other gross misconduct; he shall be and remain disqualified for benefits until he

has thereafter worked for at least thirty days in covered employment: Provided, That for the purpose of this subdivision the words "any other gross misconduct" shall include, but not be limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from such act or acts[.]

theft when he took items from the cafeteria without paying for them.

Mr. Kirk argued before the administrative law judge that the items he stole were of little value; therefore, he did not commit gross misconduct. We have previously held that a cashier's failure to give a patron an amount of $21.50 owed on a winning racetrack ticket constituted theft and gross misconduct. *Shively v. Gatson*, 185 W.Va. 660, 664, 408 S.E.2d 610, 614 (1991) (per curiam). Therefore, for the purposes of applying the unemployment compensation statute and based on the particular facts of this case, the value of the item stolen is inconsequential in determining whether a theft has occurred. Further, Mr. Kirk argues that his behavior is excused because other hospital employees also removed food from the cafeteria without paying for it. Mr. Kirk's reliance on this unproven statement is misplaced as we are aware of no authority that exempts criminal behavior simply because other people are guilty of the same crime. The hospital personnel stated that they investigate and take action in every circumstance where they receive knowledge of possible misconduct. There is nothing in the record to refute this statement.

██ After correctly finding that Mr. Kirk took food without paying for it, the Board and the circuit court misapplied the law when they held that such conduct amounted to simple misconduct. An examination of the applicable statutory language reveals that in cases of "theft, larceny, ... in connection with [the claimant's] work; or any other gross misconduct; [the claimant] shall be and remain disqualified for benefits until he has thereafter worked for at least thirty days in covered employment[.]" W. Va.Code § 21A-6-3. The plain statutory language mandates that theft be considered gross misconduct. Where a statute is unambiguous, the incorporation of additional words, terms, or provisions is not the domain of the courts, and the statute will be applied as written. *See Mallamo v. Town of Rivesville*, 197 W.Va. 616, 477 S.E.2d 525 (1996); *Peyton v. City Council of Lewisburg*, 182 W.Va. 297, 387 S.E.2d 532 (1989); *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). The statute includes

theft as a form of gross misconduct such that unemployment compensation benefits are withheld indefinitely. Accordingly, Thomas met, by a preponderance of the evidence, its burden of persuasion that Mr. Kirk's conduct falls within a disqualifying provision of the unemployment compensation statutes.

## IV.

## CONCLUSION

Accordingly, we conclude that Mr. Kirk stole food from the hospital cafeteria and that his actions amounted to theft. We further determine that Mr. Kirk's theft of food items constituted gross misconduct and was the basis for Mr. Kirk's termination. Therefore, unemployment compensation benefits are denied. For the foregoing reasons, we reverse the March 18, 2004, order of the Circuit Court of Kanawha County.

Reversed.

STARCHER, J., dissenting.

Mr. Kirk was fired for taking food at work without paying for it.

Oh, my God! It is not as if this is the first time such an act ever occurred.

Nevertheless, for his transgressions—taking food from his employer, Mr. Kirk was fired, then denied unemployment compensation benefits—benefits that were restored by the Unemployment Compensation Board and sustained by Judge Irene Berger, subject to a six week disqualification period.

But the employer, Thomas Memorial Hospital, thought firing and a six-week disqualification wasn't a severe enough penalty.

So Thomas appealed (and lost)—twice, with the Unemployment Compensation Board and in circuit court. I mean, Thomas was determined to send a message!

Now the majority of this Court has reversed the Unemployment Compensation Board and a good circuit judge. No mercy for food stealers!

I note that the lawyer who apparently led Thomas Memorial Hospital to this stunning victory over a "food-stealing janitor" (who had no lawyer) was treasurer of the "Christian Legal Society" when he was in law school. I wonder what a certain Carpenter's reaction would be to a decision that gave the *maximum possible penalty* to a janitor who took food at work without paying.

Accordingly, I dissent.