# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Verizon Services Corp.,**
**Petitioner Below, Petitioner**

**vs)  No. 12-1106** (Kanawha County 12-AA-30)

**Board of Review of Workforce West Virginia;**
**Jack Canfield, Chairman, Leslie R. Facemyer,**
**Member, and Gino Colombo, Member; Russell L. Fry,**
**Executive Director of Workforce West Virginia;**
**and Elizabeth E. Hildreth, et al., claimants,**
**Respondents Below, Respondents**

**FILED**

November 8, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Verizon Services Corp. ("Verizon"), by counsel Mark H. Dellinger and Jill E. Hall, appeals the Circuit Court of Kanawha County's "Final Order" entered on July 31, 2012, affirming an award of unemployment compensation benefits to employees for a period of time when they were on strike. The claimant employees, respondents herein, by counsel Vincent Trivelli, respond in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming is appropriate under Rule 21 of the Rules of Appellate Procedure.

### I. Facts and Procedural History

Verizon is a telecommunications company that operates a call center in Clarksburg, West Virginia, serving customers in other states. Upon the expiration of a collective bargaining agreement, when negotiations for a new agreement reached an impasse, the union employees of the Clarksburg call center went on strike from August 7 through August 21, 2011. During the strike, Verizon operated the Clarksburg center using management employees brought in from its offices in other states. The Clarksburg center was closed for approximately two days while the out-of-state employees traveled and were trained. If calls could not be answered at the Clarksburg center, they were automatically re-directed to Verizon call centers in other states or the caller might have received a recorded message that customer service agents were unavailable because of the strike (referred to as the "strike message"). There were thirty to thirty-two people working during the strike, down from the normal 101 workers. During the strike, Verizon shifted the focus of the Clarksburg call center from that of a retention center, which assists callers who

1

are at risk for disconnecting their Verizon services, to that of a general consumer sales and service center, which assists customers with various telecommunication service and product needs.

A group of employees who went on strike ("claimants" herein) applied for unemployment compensation benefits. After holding an evidentiary hearing, by order of December 23, 2011, the Labor Dispute Tribunal of WorkForce West Virginia ruled that the claimants were eligible for benefits during the period of the strike.[1] The tribunal held that although the claimants were unemployed during a labor dispute, they were not disqualified from receiving benefits because there had not been "a stoppage of work" in accordance with West Virginia law. State law provides,

> Upon the determination of the facts by the commissioner, an individual is disqualified for benefits: . . .
>
> (4) For a week in which his or her total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he or she was last employed . . . .

West Virginia Code § 21A-6-3, in part.[2] Fifty years ago, this Court interpreted the phrase "stoppage of work" as used in the unemployment compensation statutes to refer to the employer's operations, not to a mere cessation of work by the claimant:

> The term "stoppage of work", within the meaning of the unemployment compensation statutes of this state, refers to the employer's operations rather than to a mere cessation of employment by claimants of benefits under the provisions of such statutes; and, in order that employees may be disqualified from receiving unemployment compensation benefits because of "a stoppage of work" resulting from a labor dispute, it must appear that there has resulted a substantial curtailment of the employer's normal operations.

Syl. Pt. 2, *Cumberland & Allegheny Gas Co. v. Hatcher*, 147 W.Va. 630, 130 S.E.2d 115 (1963), *overruled on other grounds by Lee-Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982). Furthermore,

> [i]t is not required that there be a complete cessation of all activities of the employer to constitute a "stoppage of work." The general rule is that the term "stoppage of work" as used in statutes of this nature is held to refer to the employer's plant operations rather than to the employees' labor, and to mean a

---

[1]One claimant was deemed ineligible because he was on a disability leave during the strike. His situation is not at issue herein.

[2]This statute goes on to specify certain exceptions that are not applicable in this appeal. The sole focus of Verizon's appeal is whether there was a "stoppage of work" pursuant to West Virginia § 21A-6-3(4).

substantial curtailment of work or operations in the employing establishment rather than a mere cessation of work by the claimants. 81 C.J.S. Social Security and Public Welfare § 190, page 283. "It is generally agreed that a stoppage of work commences at the place of employment when a definite or substantial curtailment of operations occurs . . . . The stoppage need not be complete and it will suffice if there has been a substantial curtailment of operations." 28 A.L.R.2d 322, Anno.

*Cumberland*, 147 W.Va. at 638, 130 S.E.2d at 120 (additional citations omitted). "A determination of the existence or nonexistence of a stoppage of work in a case of this nature must necessarily depend upon the facts of each case. It cannot be determined solely on the basis of the proportionate number of employees affected." *Id.*, 147 W.Va. at 639, 130 S.E.2d at 121.

In the case *sub judice*, the Labor Dispute Tribunal concluded that there was not a substantial curtailment in Verizon's Clarksburg facility during the strike. Verizon continued to operate the facility with replacement workers answering and handling customer calls. Although Verizon argued that the volume of calls handled by the Clarksburg facility during the strike was reduced, the tribunal found that documents submitted by Verizon were not dispositive on call volume or worker performance because specific protocols on entering data had not been followed during the strike. Moreover, the tribunal found that the record was unclear as to how many calls were re-routed to other call centers, and was unclear as to how many callers received the "strike message." After hearing the evidence, the tribunal made the finding of fact that the number of customer losses during the labor dispute was relatively equivalent to losses during non-labor dispute weeks.

The Labor Dispute Tribunal's order was affirmed and adopted in its entirety by the Board of Review of WorkForce West Virginia on February 25, 2012. Verizon appealed to circuit court, which affirmed by order of July 31, 2012.

## II. Standard of Review

Verizon now appeals to this Court. We apply the following standard of review:

The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994). "Moreover, 'the burden of persuasion is upon the former employer to demonstrate by the preponderance of the evidence that the claimant's conduct falls within a disqualifying provision of the unemployment compensation statute.' *Peery [v. Rutledge]*, 177 W.Va. [548] at 552, 355 S.E.2d [41] at 45 (internal citations omitted)." *Herbert J. Thomas Mem'l Hosp. v. Bd. of Review of W.Va. Bureau of Employment Programs*, 218 W.Va. 29, 32, 620 S.E.2d 169, 172 (2005).

3

### III. Discussion

Verizon argues that applying the test in Syllabus Point 2 of *Cumberland*, 147 W.Va. at 630-31, 130 S.E.2d at 116, there was a "substantial curtailment of" its "normal operations" at the Clarksburg call center during the strike, thus there was a work stoppage and the striking employees were not entitled to unemployment compensation benefits. Verizon argues that the Labor Dispute Tribunal erroneously considered all operations at the call center during the strike, as opposed to just considering "normal" operations as directed by *Cumberland*. Verizon argues that there was a total curtailment of its normal operations because the center had been operating as a retention call center since June 1, 2011, but during the August strike, it was operated as a general sales and service call center and performed no retention work.

Verizon also argues that, even considering the general customer service work performed during the strike, there was still a substantial curtailment of operations at the Clarksburg center. This Court said in *Cumberland* that there does not need to "be a complete cessation of all activities of the employer to constitute a 'stoppage of work.'" *Id.,* 147 W.Va. at 638, 130 S.E.2d at 120. Verizon argues that there were seventy percent fewer employees working at the center during the strike; the substitute workers were untrained and inexperienced at handling calls; the number of general sales and service orders processed during the strike was drastically diminished as compared to general sales and service orders during pre-strike weeks; the center was closed for two days while the substitute workers traveled to Clarksburg and were trained; not all customer services were offered during the strike; and the substitute workers did not proactively offer any products or services but simply answered questions and did whatever the customers asked. Verizon argues that the Labor Dispute Tribunal misunderstood the data on customer losses by not taking into consideration that no at-risk customers were "won back" during the strike.

The claimants respond that Verizon failed to meet its burden of proving that there was a substantial curtailment of normal operations, thus the unemployment benefits were properly awarded. They argue that Verizon's assertion about the suspension of "normal" operations is contradicted by the record evidence—including that this call center had been a general sales and service center for twenty years and only became a retention center two months before the work stoppage. Furthermore, three months after the work stoppage ended, Verizon once again designated the Clarksburg center as a general sales and service center. The claimants argue that the work of a retention call center is very similar to that of a general sales and service call center, involving the use of slightly different protocols in assisting customers over the telephone. Moreover, they contend that the decision to not perform customer retention and other work during the work stoppage was a corporate choice. They also assert that Verizon failed to provide any data comparing call volume during the labor dispute with call volume during the short time prior to the dispute when the facility was designated as a retention center. Finally, they argue that Verizon failed to produce any data on the number of customer calls re-routed or answered with the "strike message."

We have carefully considered the record on appeal and the parties' arguments. Whether there was a work stoppage, i.e., a substantial curtailment of normal operations, necessarily depends on issues of fact. The Labor Dispute Tribunal held an evidentiary hearing and made

findings of fact that were adopted by the Board of Review, and we are required to give substantial deference to those findings of fact unless they are clearly wrong. *See* Syl. Pt. 3, *Adkins*, 192 W.Va. at 563, 453 S.E.2d at 397. A finding is clearly wrong, also referred to as clearly erroneous, "when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . [A] reviewing court may not overturn a finding simply because it would have decided the case differently . . . ." Syl. Pt. 1, in part, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

On the record before us, we simply cannot conclude that the Labor Dispute Tribunal and the Board of Review were clearly wrong, or that the circuit court erred in affirming these decisions. Although some customer calls were probably automatically re-routed to other call centers, Verizon has failed to provide data on how many calls were re-routed. There is also no data on how many callers, if any, received the "strike message." Verizon argues that the Clarksburg center's normal focus was on customer retention, but the Labor Dispute Tribunal found that the number of customer losses during the strike was roughly equivalent to losses before the strike. Verizon argues that the tribunal failed to consider retention data such as the number of customers usually "won back" during non-strike weeks, but the substitute employees did not follow protocol on recording data, and they were instructed not to perform retention work. Inasmuch as Verizon did not have data that was collected during the strike using the same protocols as data collected before the strike, it was not clearly wrong for the Labor Dispute Tribunal to deem Verizon's documents to be non-dispositive on call volume and worker performance. Applying our deferential standard of review to the lower tribunal's findings of fact, we find no basis for reversal.

Fewer employees were working at the call center during the strike than worked during non-strike periods. However, there were employees at work during the strike and these employees were handling calls. Moreover, the existence of a work stoppage cannot be determined solely on the basis of the proportionate number of employees affected. *Cumberland*, 147 W.Va. at 639, 130 S.E.2d at 121. In *Cumberland*, we cited with approval an out-of-state case that also considered factors such as lost revenue and services rendered. *Id.*, 147 W.Va. at 642-43, 130 S.E.2d 122-23 (discussing *Mountain States Telephone & Telegraph Co. v. Sakrison*, 225 P.2d 707 (Ariz. 1950)). *Cumberland* involved an eighty percent reduction in the number of people working during a strike, resulting in certain work not being performed. Nonetheless, services were rendered to Cumberland's customers during that strike and we affirmed the decision that there was not a work stoppage within the meaning of the unemployment compensation statute.

Verizon's remaining issues on appeal may be disposed of in short order. It argues that the Labor Dispute Tribunal failed to consider the Clarksburg center's "normal" operations, noting that this word is omitted from a discussion in the tribunal's order. However, a reading of the entire order shows that the tribunal did consider the facility's normal operations. A central issue in the case, which the tribunal considered, was whether the normal operations were as a retention center or a general sales and service center. Verizon also argues that the tribunal erroneously considered that the center was a general sales and service center up until two months before the strike, and was then changed back to a general sales and service center three months after the

strike. However, inasmuch as Verizon raised the issue of what the center's "normal" operations were, we find no error in the tribunal's consideration of operations shortly before and shortly after the strike.

For the foregoing reasons, we affirm.

Affirmed.


**ISSUED:** November 8, 2013

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum

**DISSENTING:**

Chief Justice Brent D. Benjamin
Justice Allen H. Loughry II


**Loughry, J., dissenting:**

I dissent to the majority's decision to affirm, by memorandum decision, the award of unemployment benefits in this case. The majority, like the circuit court and Board of Review, ignores the plain language of *Cumberland and Allegheny Gas Co. v. Hatcher*, 147 W. Va. 630, 130 S.E.2d 115 (1963), and the nearly overwhelming evidence of work stoppage in this matter.

In *Hatcher*, this Court held that a "stoppage of work" within the meaning of the unemployment compensation statutes means a "substantial curtailment of the employer's normal operations." Syl. Pt. 2, 147 W. Va. 630, 130 S.E.2d 115 (emphasis added). In this case, the "normal" operation of the employer was as a customer retention center. It is undisputed that during the strike, this "normal" operation ceased entirely because the employer did not have qualified employees to continue retention operations. As a result of this total curtailment of its normal operation, it began operating as a sales and service center. In my view, the analysis need go no further given the complete cessation of normal operations.

However, even if the replacement work were to be considered, it is clear that these operations were substantially curtailed as well, within the definition of *Hatcher*. To that end, during the two-week strike, the center was closed for two and a half days with a seventy percent reduction in the number of employees. As to the specific sales and service operations, for ten days no requests to move services were handled and a backlog of 9,000 calls was generated. Because of the strike, many customers received a "dead end" message stating their call could not be handled. Not surprisingly, there was a 50% to 68.2% reduction in call volume and work

6

orders were down 87.5% from when the center previously worked as a sales and service center. Most tellingly, only 960 work orders were processed as compared to 7,696 orders during a representative two-week period earlier in the year–an approximate 87.5% reduction in these "substitute" operations. The circuit court and majority's reliance on the absence of evidence of retention data is wholly misplaced and patently unfair. The reason the data was not properly recorded was due to the total absence of qualified employees to record the data, which absence was occasioned by the strike itself.

Accordingly, I dissent. I am authorized to state that Chief Justice Benjamin joins me in this dissent.

7